## McInnis vs. Lyman.

*January 13 — February 3, 1885.*

VENDOR AND PURCHASER OF LAND: COVENANT OF SEIZIN. *(1) Unoc-cupied lands: Constructive eviction. (2) After-acquired title, when inures. (3) Measure of damages. (4) Rights of parties when fixed: Contesting validity of adverse title.*

| | |
|---|---|
| 62 | 191 |
| 77 | 129 |
| 62 | 191 |
| 85 | 436 |
| 62 | 191 |
| 109 | 323 |
| 62 | 191 |
| 52 LRA | 647 |
| 62 | 191 |
| 116 | 1 47 |

1. If a grantor assumes to convey with full covenants of warranty unoccupied lands to which he has no title, there is at once a constructive eviction of the grantee which entitles him to the same remedies that he would be entitled to had he been turned out of the actual possession of the land by legal process.

2. If, in such a case, the grantor subsequently obtains a good title, while he will be estopped to deny the title of his grantee, yet he cannot compel the latter, after his eviction by title paramount, to accept such after-acquired title in satisfaction of the covenants in his deed or in mitigation of damages for the breach thereof.

3. If, after a constructive eviction of the grantee of unoccupied land, and before the commencement of an action upon the covenant of seizin, the title of the grantee becomes perfect by an after-acquired title of the grantor inuring to his benefit, he can recover from such grantor only a fair indemnity for damage sustained by reason of acts done by the owners of the adverse title, or under their authority. But if the grantee remains disseized, he can recover the consideration paid for the land.

4. Where such a constructive eviction apparently results from the existence of a tax deed, held by a third person, at the time of the conveyance, the grantor may, in the action for the breach of the covenant, contest the validity of such tax deed. The rights of the parties are fixed by the conditions existing at the time of the conveyance to the plaintiff, and the fact that the statute of limitations has since run in favor of the tax deed is immaterial.

APPEAL from the Circuit Court for *Lincoln* County.

This is an action to recover damages for a breach of the covenant of seizin contained in a deed of certain land, executed by the defendant to the plaintiff.

In March, 1873, the parties made a written agreement for the sale, by the defendant to the plaintiff, of three forty-acre lots of land in Lincoln county, for the price of $1,250, pay-

able as therein specified. This agreement prohibited the plaintiff from taking any timber from the land until full payment therefor should be made.

In June, 1876, the defendant conveyed such land to the plaintiff by a full covenant warranty deed, including covenants of title and seizin in the grantor. The consideration named in this deed is $1,200, and the same was paid by the plaintiff to the defendant.

One of the forty-acre lots described in the deed was sold to the county of Marathon in September, 1871, for nonpayment of the taxes assessed thereon in 1870, and in December, 1874, was duly conveyed to said county of Marathon. In January, 1875, this deed was recorded in Marathon county, but before that time the county of Lincoln had been organized, and it included this land. It was recorded in Lincoln county March 4, 1876. In April, 1875, Marathon county conveyed the same land to the Wisconsin Valley Railroad Company, and in September of the same year that company conveyed an undivided half thereof to one Thompson and one Smith. In July, 1880, that company and Thompson and Smith conveyed the land to the defendant, except a strip 100 feet wide, "where the track of the W. V. R. R. has been laid over the premises."

The testimony tends to show that, before the recording of the tax deed in Lincoln county, the plaintiff, pursuant to a license from the defendant, entered upon the lot conveyed by the tax deed, and cut and removed therefrom a quantity of timber. When the tax deed was recorded in Lincoln county, and when the deed from defendant to plaintiff was executed, the land was vacant and unoccupied. After the execution of the last-named deed,— probably in 1877 and 1878,— a large quantity of timber standing on such lot was cut and removed therefrom, but not by the plaintiff or the railroad company, or said Thompson and Smith.

This action was commenced in 1882. Before it was com-

menced, the defendant informed the plaintiff that he had procured a deed from the railroad company, and from Thompson and Smith, of the lot conveyed by the tax deed. The testimony tended to show that such lot was more valuable than either of the other two forty-acre lots conveyed by the defendant to the plaintiff; also, that after the timber was taken therefrom the lot was valueless.

The case is further stated in the opinion. The jury found for the plaintiff, and assessed his damages as $710; the amount being $500, and interest thereon for six years. A motion for a new trial was denied, and judgment was entered for the plaintiff pursuant to the verdict. The defendant appeals from the judgment.

For the appellant there was a brief by *Silverthorn, Hurley & Ryan,* of counsel, and oral argument by *Mr. Hurley.*

For the respondent there was a brief by *Eldred & Bump,* attorneys, and *Neal Brown,* of counsel, and the cause was argued orally by *Mr. Brown.* To the point that the rule of damages adopted by the court below was correct, they cited *Nichol v. Alexander,* 28 Wis. 118; *Noonan v. Ilsley,* 21 id. 138; *Rich v. Johnson,* 2 Pin. 88; 2 Sutherland on Dam. 257–268, 276–7, 281–4; *Messer v. Oestreich,* 52 Wis. 684; *Bartelt v. Braunsdorf,* 57 id. 1; *Cummins v. Kennedy,* 3 Litt. 118; *Williamson v. Test,* 24 Iowa, 138; *Stout v. Jackson,* 2 Rand. (Va.), 132; Rawle on Covenants, 244; *Morris v. Phelps,* 5 Johns. 49; *Blanchard v. Hoxie,* 34 Me. 376; *Cornell v. Jackson,* 3 Cush. 506. The title is not necessarily vested in the plaintiff. An after-acquired title does not vest in the covenantee. It is in the covenantor, but his covenants estop him and those claiming under him from claiming the land. But he will be relieved from this estoppel by a recovery of damages for breach of his covenants, and upon satisfying the judgment will have the land, and the plaintiff cannot disturb him in the enjoyment of it. *Duchess of Kingston's Case,* 2 Smith's L. C. 573; *Porter v. Hill,*

9 Mass. 34; *Foss v. Stickney*, 5 Greenl. 390; 2 Sutherland on Dam. 265–7; *Stinson v. Sumner*, 9 Mass. 143; *Blanchard v. Ellis*, 1 Gray, 202; *Parker v. Brown*, 15 N. H. 176.

LYON, J. In *Nichol v. Alexander*, 28 Wis. 118, it was held that if a grantor, by full covenant deed of warranty, assumes to convey unoccupied lands to which he has no title, there is at once a constructive eviction of the grantee which entitles him to the same remedies that he would be entitled to had he been turned out of the actual possession of the land by legal process. It was also there held that if, in such a case, the grantor subsequently obtains a good title to the land, while he would be estopped to deny the title of his grantee, yet he cannot compel the latter, after his eviction by title paramount, to accept such after-acquired title in satisfaction of the covenants in his deed or in mitigation of damages for a breach thereof. As to constructive eviction, see Rawle on Covenants (2d ed.), 268, and cases cited in note.

The foregoing propositions must be regarded as the settled law of this state. They are rules of property, and the maxim *stare decisis* is peculiarly applicable to them. It may be said, however, that they are supported by every weighty authority elsewhere, and we believe they are sound in principle.

On the trial of this cause the circuit judge held that, under the deed of 1880, from the railroad company and Thompson and Smith to the defendant, the title to the lot thereby conveyed vested in the plaintiff, and that from the time of the execution of such deed his title to the lot was perfect, except as to the land reserved for the railroad. Indeed, this view was concurred in by both parties, and the case was tried upon this theory, and upon the further theory that the land was valueless after the timber had been removed therefrom.

The rule of damages laid down by the court is to the effect

that if, after the tax deed was recorded in 1876, and before
the title so inured to the plaintiff in 1880, the lot " was ren-
dered valueless without fault of the plaintiff, in such case the
plaintiff is entitled to recover such proportion of the whole
purchase money paid for the whole land purchased as the
value of the land the title or value of which has failed, bore
to the value of the whole land bought, with interest on the
sum so found from the time of the failure of such title or
value to the time of the trial of this cause, not exceeding
six years in all."

On the theory upon which the case was tried, this is not
the correct rule of damages. If the title was perfected in
the plaintiff when the action was brought, he was entitled to
a fair indemnity for all damages he had sustained by reason
of any acts done upon the premises under the tax deed.
*Noonan v. Ilsley,* 21 Wis. 138; *Smith v. Hughes,* 50 Wis.
620. It is manifest that a fair indemnity in this case would
be the value of the timber taken from the land under the
adverse title, and the proportionate value of the reserved
strip, but in no case could such damages exceed the consid-
eration paid for the land and interest thereon. The evidence
in this case, taken most liberally for the plaintiff, is that the
value of all of the timber taken from the land after the exe-
cution of the tax deed did not exceed $300; yet the verdict
is for $500 and interest.

But there is another and more serious objection to the rule
of damages laid down by the court. The plaintiff was
allowed to recover damages for all the injury to the lot, no
matter by whom committed, if without his fault. There is
considerable evidence in the record tending to show that the
timber was taken from the premises, not by virtue of the
adverse title outstanding in the railroad company and
Thompson and Smith, but by mere trespassers upon the
land. The defendant did not covenant against the wrong-
ful acts of strangers; and hence, if the title to the lot is in
the plaintiff, he cannot recover in this action for the value

of timber wrongfully taken from the lot by trespassers. The liability of the defendant is limited to injuries done by the owners of the adverse title, or under their authority. Rawle on Covenants, 77. For the errors above suggested, the judgment must necessarily be reversed.

A few observations will be made concerning the other aspect of the case. The complaint is framed upon the theory that the plaintiff's title has wholly and permanently failed. The tax deed is fair upon its face, and apparently conveyed the absolute title to the lot to the grantee therein named, which became indefeasible on the recording of the deed in Lincoln county, in March, 1876. So, upon the face of the record it appears that when the defendant executed the deed of the lot to the plaintiff, at a later date, the defendant had no title whatever thereto. The covenant of seizin, contained in his deed to the plaintiff, was therefore broken as soon as such deed was executed. The land being unoccupied at that time, this, as we have already seen, was in law an eviction of the plaintiff, and gave him an apparent right of action to recover the consideration paid for the lot, and interest thereon, in an action for a breach of the covenant of seizin. One sum being named as the consideration for the three lots, the circuit judge gave the correct rule for ascertaining the consideration paid for the lot to which the defendant's title had thus failed.

It is competent, however, for the defendant to contest the validity of the tax deed. If, from any cause, the same should be held invalid, of course its existence would be no breach of the covenants in the deed to plaintiff. So far as the covenant of seizin is concerned, it is immaterial that the statute of limitations afterwards ran in favor of the deed. In this action the rights of the parties are fixed by the conditions existing when the deed to the plaintiff was executed; that being the time when the breach complained of occurred and when the right of action therefor accrued.

As already stated, it was assumed on the trial, by court

McInnis vs. Lyman.

and counsel, that the title to the lot in question vested in the plaintiff under the deed to the defendant of 1880. We have already seen that this is not necessarily so. The question as to what acts on the part of the plaintiff would amount to an acceptance of the title under that deed has not been argued, and will not now be determined. Whether he has accepted that title may, we think, properly be litigated in this action. If he has not, the fact that timber was cut upon the land after 1876, and before 1880, is of no importance. The damages in that event will necessarily be assessed upon an entirely different and independent basis; that is, upon the basis of the consideration paid, and interest thereon. There should be deducted from this amount, however, the value of any timber taken from the lot by the plaintiff after the contract of purchase in 1873 and before the recording of the tax deed in Lincoln county in 1876. As to the strip reserved for the railroad track, the damages must necessarily be assessed on the basis of the consideration paid therefor, because, in any view of the case, the plaintiff has obtained no title thereto.

The trial in the circuit court failed to determine whether the plaintiff now has the title to the land described in the tax deed, or whether he remains disseized thereof. The question is material, because the rule of damages depends upon its solution. The case was tried upon the theory that the plaintiff now has the title to the land; while the rule upon which the damages were assessed, is not the true rule in such a case, but is rather the rule applicable to a case of eviction and entire failure of title.

For the reasons herein suggested, the judgment must be reversed, and the cause will be remanded for a new trial.

*By the Court.*— Ordered accordingly.